**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **CRIMINAL NO.** _____ |
| ) | |
| ) | **VIOLATIONS:** |
| ) | |
| v. ) | **18 U.S.C. § 371** |
| ) | **(Conspiracy)** |
| ) | |
| **PPG PAINTS TRADING (SHANGHAI) CO.,** ) | **50 U.S.C. § 1705** |
| **LTD.** ) | **(International Emergency** |
| ) | **Economic Powers Act)** |
| Defendant. ) | |
| ) | **15 C.F.R. Parts 730–774** |
| ) | **(Export Administration** |
| ) | **Regulations)** |
| ) | |
| ) | **18 U.S.C. § 2** |
| ) | **(Causing an Act to Be Done)** |
| ) | |
| ) | **18 U.S.C. § 981(a)(1)(C)** |
| ) | **28 U.S.C. § 2461(c)** |
| ) | **(Criminal Forfeiture)** |

**INFORMATION**

The United States Attorney charges that:

**COUNT ONE**

At all times material to this Information:

**INTRODUCTION**

1.  PPG Industries, Inc. ("PPG Industries"), was a publicly-held United States corporation with its principal place of business and headquarters in Pittsburgh, Pennsylvania. PPG Industries was a major global manufacturer and supplier of chemicals, glass, fiberglass, and architectural, industrial and performance coatings.

2. Defendant **PPG PAINTS TRADING (SHANGHAI) CO., LTD.** ("**PPG PAINTS TRADING**"), a wholly-owned subsidiary of PPG Industries, was a Chinese corporation with its principal place of business in Shanghai, China. Defendant **PPG PAINTS TRADING** was engaged in the business of importing and exporting architectural, refinish, industrial and packaging coatings on behalf of various PPG Industries business units.

3. The United States Department of Commerce ("DOC"), located in the District of Columbia, was responsible for reviewing and controlling the export of certain goods and technologies from the United States to foreign countries and entities. The Export Administration Act ("EAA"), 50 U.S.C. App. §§ 2401-2420, authorized the DOC to prohibit or curtail the export of goods and technology from the United States as necessary to protect, among other things, the national security of the United States. The DOC implemented that authority through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774. Although the EAA was lapsed during the conduct at issue, at all time relevant to this Information, the EAR continued to be in effect under the provisions of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, by virtue of Executive Order 13222 (August 17, 2001), as extended by successive Presidential notices.

4. Through the EAR, the DOC authorized the exportation of goods and technology to restricted countries and foreign end-users through the issuance of a license. Any export, reexport, or transshipment of goods from the United States to a restricted country or foreign end-user without such a license was a violation of the EAR.

5. Section 734.2(b)(1) of the EAR defined "export" to mean, in pertinent part, an actual shipment or transmission of items subject to the EAR out of the United States. Section

734.2(b)(4) of the EAR defined "reexport" to mean, in pertinent part, the actual shipment or transmission of items subject to the EAR from one foreign country to another foreign country. Section 734.2(b)(6) of the EAR provided that, for purposes of the EAR, the export or reexport of items subject to the EAR that will transit through a country or countries, or be transshipped in a country or countries to a new country, or are intended for reexport to the new country, are deemed to be exports to the new country.

6. Under Part 764 of the EAR:

   a. Part 764.2(b) provided that no person may cause or aid, abet, counsel, induce, procure, or permit the doing of any act prohibited, or the omission of any act required, by the EAA, the EAR, or any order, license or authorization issued thereunder.   15 C.F.R. Part 746.2(b).

   b. Part 764.2(c) provided that no person may solicit or attempt a violation of the EAA, the EAR, or any order, license or authorization issued thereunder.   15 C.F.R. Part 746.2(c).

   c. Part 764.2(e) provided that no person may order, buy, remove, conceal, store, use, sell, loan, dispose of, transfer, transport, finance, forward, or otherwise service, in whole or in part, any item exported or to be exported from the United States, or that was otherwise subject to the EAR, with knowledge that a violation of the EAA, the EAR, or any order, license or authorization issued thereunder, has occurred, was about to occur, or was intended to occur in connection with the item.   15 C.F.R. Part 764.2(e).

7. DOC's Bureau of Industry and Security ("BIS") published a list of prohibited individuals or entities (the "Entity List") found in Supplement No. 4 to Part 744 of the EAR. Individuals or entities were placed on the Entity List by BIS because they had engaged in activities that could result in an increased risk of diversion of exported, reexported and transferred items to weapons of mass destruction programs, to activities sanctioned by the State Department, or to activities contrary to United States national security and/or foreign policy interests.

8. The Pakistan Atomic Energy Commission ("PAEC") was the science and technology organization in Pakistan responsible for, among other things, Pakistan's nuclear program, including the development and operation of nuclear power plants in Pakistan.

9. In or about November 1998, following Pakistan's first successful detonation of a nuclear device, BIS added the PAEC, as well as the PAEC's subordinate nuclear reactors and power plants, to the Entity List. As a restricted end-user, a United States manufacturer seeking to export, reexport or tranship any items subject to the EAR to the PAEC or its nuclear reactors and power plants would need first to obtain a license from DOC in the District of Columbia.

10. In 2006, the Chashma Nuclear Power Plant 2 ("Chashma 2") was a PAEC nuclear power plant under construction near Kundian, Punjab province, Pakistan. Because it is a PAEC nuclear power plant, export, reexport or transshipment of any items subject to the EAR to Chashma 2 would require a license from the DOC.

11. The conduct alleged in this Count began outside of the jurisdiction of any particular State or district, and later occurred within the District of Columbia and elsewhere, and

is therefore within the venue of the United States District of Court for the District of Columbia pursuant to Title 18, United States Code, Sections 3237(a) and 3238.

12. Company A was a Chinese construction company specializing in overseas nuclear and civil engineering project management.   Company A was the general contractor responsible for the construction of Chashma 2 for the PAEC.

13. Company B was a Chinese construction company specializing in nuclear engineering, municipal engineering, fire engineering, road engineering, and steel structure engineering.   Company B was a subcontractor working for Company A on the construction of Chasma 2.   Company B was responsible for applying coatings at Chashma 2.

14. Company C was a Chinese distributor of coatings located in Shanghai, China.

15. At one of its factories in Watertown, Connecticut, PPG Industries manufactured a high-performance paint system that was tested and certified for use inside a nuclear reactor. The paint system include a two-part epoxy base coat (product codes KL65487107A and KL65487107B), a two-part epoxy top coat (product code KLD19140 and KLD1B), and a thinner, or solvent (product code KL4093) (together, "the Coatings").   The Coatings were items subject to the EAR, were classified EAR99, and fell within the jurisdiction of the DOC.

16. In or about December 2005, defendant **PPG PAINTS TRADING** entered a contract with Company B for defendant **PPG PAINTS TRADING** to supply the Coatings for application by Company B at Chashma 2 ("Chashma 2 Contract").

17. Because Chashma 2 was a PAEC nuclear power plant, on or about January 20, 2006, PPG Industries submitted a license application to DOC in the District of Columbia for

authorization to export the Coatings for application at Chashma 2.  **PPG PAINTS TRADING** was involved in the preparation of the license application.

18. On or about June 8, 2006, PPG Industries was informed that its license application would be denied by DOC.

19. On or about June 9, 2006, PPG Industries notified defendant **PPG PAINTS TRADING** that it must abide by the ruling of the DOC denying the license and instructed defendant **PPG PAINTS TRADING** to advise Company B that it could not provide the Coatings to Company B.

20. In response, on or about June 9, 2006, defendant **PPG PAINTS TRADING** informed PPG Industries that it had informed Company B that it could not provide the Coatings.

21. At no time did the defendant **PPG PAINTS TRADING** receive or possess a license or authorization from the DOC to export, reexport or transship the Coatings from the United States to Chashma 2.

## The Conspiracy

22. Beginning in or about June 2006, and continuing through in or about March 2007, within the District of Columbia and elsewhere, defendant **PPG PAINTS TRADING** did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to commit offenses against the United States, that is, (a) to violate the IEEPA and the EAR by causing the Coatings, which **PPG PAINTS TRADING** knew were destined for Chashma 2, a PAEC nuclear power plant, to be exported, reexported, and transhipped from the United States to Chashma 2 in Pakistan, via the People's Republic of China, without first obtaining the required license from the Department of Commerce, located in the District of

Columbia; and (b) to defraud the Department of Commerce and the United States government by interfering with and obstructing a lawful government function, that is, promulgation of laws and regulations prohibiting the export, reexport or transshipment of goods from the United States to Chashma 2, a PAEC nuclear power plant without a license, by deceit, craft, trickery, and dishonest means, all in violation of Title 18, United States Code, Section 371.

## Objects of the Conspiracy

23. The objects of the conspiracy were:

    a. to make money for defendant **PPG PAINTS TRADING** and its co-conspirators;

    b. to supply the Coatings for application at Chashma 2 thereby avoiding breach of the Chashma 2 Contract;

    c. to conceal the true end-user of the Coatings from detection by the United States; and

    d. to evade the prohibitions and licensing requirements of the IEEPA and the EAR.

## Manner and Means of the Conspiracy

24. The manner and means by which the defendant **PPG PAINTS TRADING** and its co-conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

    a. Defendant **PPG PAINTS TRADING** and other conspirators began planning and acting outside of the United States to acquire Coatings from PPG Industries inside the United States to satisfy the Chashma 2 Contract;

    b.  Defendant **PPG PAINTS TRADING** outside of the United States would contact PPG Industries inside the United States, using e-mail and other forms of communication, to request orders for the Coatings called for under the Chashma 2 Contract;

    c.  Defendant **PPG PAINTS TRADING** would cause PPG Industries to export the Coatings from the United States to deliver to defendant **PPG PAINTS TRADING** in Shanghai, China, before causing the Coatings to be reexported or transshipped to Chashma 2, a PAEC nuclear power plant, without obtaining a license from the DOC, located in the District of Columbia;

    d.  To conceal the true end-user of the Coatings and to evade United States export controls, defendant **PPG PAINTS TRADING** would falsely state that the Coatings were to be used at a nuclear power plant in the People Republic of China (PRC), the export to which would not require a license from the DOC;

    e.  Defendant **PPG PAINTS TRADING** wired money from accounts outside of the United States to accounts of PPG Industries in the United States in payment for the purchased Coatings.

## Overt Acts

25. In furtherance of this conspiracy, defendant **PPG PAINTS TRADING** and other co-conspirators, both known and unknown, committed overt acts, including but not limited to the following:

    a.  On or about June 15, 2006, defendant **PPG PAINTS TRADING** met with representatives of Company A and Company B and agreed upon an arrangement whereby **PPG PAINTS TRADING** could satisfy its obligations under the Chashma 2 Contract by selling the

Coatings to Company C, a third-party distributor in China, which, in turn, would sell the Coatings to Company A or Company B for application at Chashma 2 in Pakistan.

    b.  On or about June 20, 2006, Company C sent a purchase order to defendant **PPG PAINTS TRADING** for two shipments of Coatings intended for application at Chashma 2 -- namely, 160 gallons of KL65487107A, 40 gallons of KL65487107B, and 40 gallons of KL4093 in be delivered in the first shipment ("the First Shipment of Coatings"), and 80 gallons of KL65487107A, 20 gallons of KL65487107B, and 20 gallons of KL4093 to be delivered in the second shipment ("the Second Shipment of Coatings").   The purchase order falsely stated that the Coatings were to be used at "Dalian Shi Zi Kou Nuclear Power Station," a nuclear power plant purportedly under construction in the PRC the export of goods to which would not require a DOC license.

    c.  On or about June 21, 2006, defendant **PPG PAINTS TRADING** sent an e-mail purchase order to PPG Industries requesting the production of the First Shipment of Coatings and their delivery by airfreight to defendant **PPG PAINTS TRADING**.

    d.  On or about July 13, 2006, defendant **PPG PAINTS TRADING** sent an e-mail responding to an e-mail from PPG Industries requesting the end user for the First Shipment of Coatings.   In the e-mail, defendant **PPG PAINTS TRADING** falsely stated that the end user was "Da Lian Shi Zi Kou Nuclear Power Station."

    e.  At defendant **PPG PAINTS TRADING's** request and direction, in or about July 2006, PPG Industries exported the First Shipment of Coatings from the United States to defendant **PPG PAINTS TRADING** in Shanghai, China.

   f. On or about July 28, 2006, after the First Shipment of Coatings had arrived in Shanghai, defendant **PPG PAINTS TRADING** sent an e-mail to PPG Industries requesting certain shipping documents to facilitate getting "the goods ready for exporting. Once the documents are received, the goods will be good to go."

   g. On or about July 31, 2006, defendant **PPG PAINTS TRADING** issued a "Sales Order Acknowledgement [sic]" to facilitate transfer of the First Shipment of Coatings to Company C.

   h. On or about July 31, 2006, defendant **PPG PAINTS TRADING** issued a document entitled "Delivery Docket" to facilitate transfer of the First Shipment of Coatings to Company C .

   i. On or about July 31, 2006, Company C provided delivery instructions to defendant **PPG PAINTS TRADING** requesting the delivery of the First Shipment of Coatings to Company C by 5:00 p.m. on the same day and falsely stating that the goods were for use at the Dalian nuclear power plant.

   j. On or about July 31, 2006, defendant **PPG PAINTS TRADING** billed Company C 146,240.01 Chinese Yuan for the First Shipment of Coatings.

   k. On or about August 2, 2006, defendant **PPG PAINTS TRADING** received and deposited 146,240 Chinese Yuan from Company C in payment for the First Shipment of Coatings.   This payment was .01 Chinese Yuan less than the amount billed by defendant **PPG PAINTS TRADING** to Company C for the First Shipment of Coatings.

   l. On or about August 2, 2006, defendant **PPG PAINTS TRADING** billed Company C .01 Chinese Yuan for the arrearage in the amount of money Company C owed defendant **PPG PAINTS TRADING** for the First Shipment of Coatings.

   m. On or about August 7, 2006, defendant **PPG PAINTS TRADING** a purchase order by e-mail to PPG Industries requesting the production of the Second Shipment of Coatings.

   n. On or about August 15, 2006, defendant **PPG PAINTS TRADING** sent an e-mail responded to an e-mail from PPG Industries requesting the end-user for the Second Shipment of Coatings.   In the e-mail, defendant **PPG PAINTS TRADING** falsely stated that the end user was "Da Lian Shi Zi Kou Nuclear Power Station."

   o. At defendant **PPG PAINTS TRADING's** request and direction, in or about September 2006, PPG Industries exported the Second Shipment of Coatings from the United States to defendant **PPG PAINTS TRADING** in Shanghai, China.

   p. On or about October 24, 2006, defendant **PPG PAINTS TRADING** issued a sales order acknowledgment to facilitate transfer of the Second Shipment of Coatings to Company C.

   q. On or about October 31, 2006, defendant **PPG PAINTS TRADING** billed Company C 69,019.99 Chinese Yuan for the Second Shipment of Coatings.

   r. On or about November 1, 2006, Company C provided delivery instructions to defendant **PPG PAINTS TRADING** for the Second Shipment of Coatings.

   s. On or about November 2, 2006, defendant **PPG PAINTS TRADING** issued a document entitled "Delivery Docket" to facilitate transfer of the Second Shipment of Coatings to Company C.

   t. On or about October 16, 2009, defendant **PPG PAINTS TRADING** received and deposited 69,020 Chinese Yuan from Company C in payment for the Second Shipment of Coatings.

   u. On or about October 23, 2006, defendant **PPG PAINTS TRADING** sent a purchase order by e-mail to PPG Industries requesting the production and shipment to defendant **PPG PAINTS TRADING** of 80 gallons of KL65487107, 20 gallons of KL65487107B, 75 gallons of KLD19140, 50 gallons of KLD1B, and 40 gallons of KL4093 ("the Third Shipment of Coatings"). In an e-mail accompanying that purchase order, defendant **PPG PAINTS TRADING** falsely stated to PPG Industries that the end user for the Third Shipment of Coatings was "Da Lian Shi Zi Kou Nuclear Power Station."

   v. At defendant **PPG PAINTS TRADING's** request and direction, in or about December 2006, PPG Industries exported the Third Shipment of Coatings from the United States to defendant **PPG PAINTS TRADING** in Shanghai, China.

   w. On or about January 26, 2007, defendant **PPG PAINTS TRADING** issued a sales order acknowledgment to facilitate transfer of the Third Shipment of Coatings to Company C.

      x.      On or about December 18, 2006, defendant **PPG PAINTS TRADING** wired funds to PPG Industries which included a payment of $12,455.13 for the First Shipment of Coatings, and $1,965.74 for the Second Shipment of Coatings.

(**Conspiracy to Violate the International Emergency Economic Powers Act and the Export Administration Regulations and to Defraud the United States and the U.S. Department of Commerce,** in violation of Title 18, United States Code, Section 371; **Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2)

### COUNT TWO

26.      Paragraphs 1 through 21 of Count One of this Information are re-alleged as if fully set forth herein.

27.      On or about June 21, 2006, through on or about December 18, 2006, in the District of Columbia and elsewhere, defendant **PPG PAINTS TRADING** willfully exported, reexported, and transshipped, and attempted to export, reexport, and tranship 240 gallons of Coatings – namely, 160 gallons of KL65487107A, 40 gallons of KL65487107B, and 40 gallons of KL4093 – from the United States to Chashma 2 in Pakistan, via the PRC, knowing the Coatings were destined for Chashma 2, a PAEC nuclear power plant, without having obtained an export license from the United States Department of Commerce, located within the District of Columbia.

(**Unlawful Export or Attempted Export**, in violation of Title 50, United States Code, Sections 1705(a) and (c); Executive Order 13222; Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2; **Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

### COUNT THREE

28.      Paragraphs 1 through 21 of Count One of this Information are re-alleged as if fully set forth herein.

29. On or about August 7, 2006, through on or about December 18, 2006, in the District of Columbia and elsewhere, defendant **PPG PAINTS TRADING** willfully exported, reexported, and transshipped, and attempted to export, reexport, and transship 120 gallons of Coatings – namely, 80 gallons of KL65487107A, 20 gallons of KL65487107B, and 20 gallons of KL4093 -- from the United States to Chashma 2 in Pakistan, via the PRC, knowing the Coatings were destined for Chashma 2, a PAEC nuclear power plant, without first having obtained an export license from the United States Department of Commerce, located within the District of Columbia.

(**Unlawful Export or Attempted Export**, in violation of Title 50, United States Code, Sections 1705(a) and (c); Executive Order 13222; Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2; **Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNT FOUR

30. Paragraphs 1 through 21 of Count One of this Information are re-alleged as if fully set forth herein.

31. On or about October 23, 2006, through on or about March 1, 2007, in the District of Columbia and elsewhere, defendant **PPG PAINTS TRADING** willfully exported and attempted to export, reexport, and transship 265 gallons of Coatings -- namely, 80 gallons of KL65487107, 20 gallons of KL65487107B, 75 gallons of KLD19140, 50 gallons of KLD1B, and 40 gallons of KL4093 -- from the United States to Chashma 2 in Pakistan, via the PRC, knowing the Coatings were destined for Chashma 2, a PAEC nuclear power plant, without first having obtained an export license from the United States Department of Commerce, located within the District of Columbia.

(**Unlawful Export or Attempted Export**, in violation of Title 50, United States Code, Sections 1705(a) and (c); Executive Order 13222; Title 15, Code of Federal Regulations, Supplement 4 to Part 744 and Section 764.2; **Causing an Act to Be Done**, in violation of Title 18, United States Code, Section 2.)

## **FORFEITURE ALLEGATION**

32.    The violations alleged in Counts One through Count Three of this Information are re-alleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

33.    As a result of the offenses alleged in Count One through Count Three of this Information, defendant shall forfeit to the United States any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offenses alleged in Count One through Count Three.    The property to be forfeited includes, but is not limited to, the following:

> Money Judgment
>
> a sum of money of at least $ 32,319, which represents a sum of money equal to property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of the offenses alleged in Count One through Count Three of this Information.

By virtue of the commission of the felony offenses charged in Count One through Count Three of this Information, any and all interest that defendant has in property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

34.    If, as a result of any act or omission of the defendant, the property identified above:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third person;

      (c)    has been placed beyond the jurisdiction of the Court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said defendant up to the value of said property listed above as being subject to forfeiture.

(**Criminal Forfeiture**, in violation of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c)).

Respectfully submitted,

_____
RONALD C. MACHEN JR.
UNITED STATES ATTORNEY


_____
G. MICHAEL HARVEY (D.C. Bar No. 447465)
JOHN BORCHERT (D.C. Bar No. 472-824)
Assistant United States Attorneys
National Security Section
555 Fourth Street, NW (11th Floor)
Washington, D.C. 20530
(202) 252-7810 (Harvey)
(202) 252-7811 (Borchert)
Michael.Harvey2@usdoj.gov
John.Borchert@usdoj.gov

December \_\_\_\_\_, 2010

December \_\_\_\_\_, 2010