IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | CRIMINAL NO. 10-343-RMC |
| v. | ) ) | **FILED** |
| PPG PAINTS TRADING (SHANGHAI) CO., LTD. | ) ) ) | DEC 21 2010 |
| Defendant. | ) ) | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

## FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

Had this case gone to trial, the United States would have proven beyond a reasonable doubt that:

Beginning in or about June 2006, and continuing through in or about March 2007, within the District of Columbia and elsewhere, defendant **PPG PAINTS TRADING (SHANGHAI) CO., LTD.** ("**PPG PAINTS TRADING**"), did willfully conspire, confederate, and agree with others known and unknown, to violate the International Emergency Economic Powers Act ("IEEPA") and the Export Administration Regulations ("EAR") by causing the export, reexport and transshipment of certain PPG Industries, Inc. ("PPG Industries"), high performance coatings from the United States to the Chashma Nuclear Power Plant 2 ("Chashma 2") in Pakistan via the People's Republic of China, without obtaining the necessary license from the Department of Commerce, located in the District of Columbia.

The coatings at issue were manufactured and exported by PPG Industries in 2006. In 2006, PPG Industries was a multinational, publicly-held United States corporation with its principal place of business and headquarters in Pittsburgh, Pennsylvania. It was a major global manufacturer and supplier of chemicals, glass, fiberglass, and architectural, industrial and

performance coatings. It had approximately 125 manufacturing facilities and equity affiliates in more than 20 countries and employed approximately 32,000 people worldwide. PPG Industries' exports in 2006 were approximately $1 billion. In 2006, PPG Industries' worldwide net sales totaled approximately $11 billion, of which in excess of $6 billion were for sales of coatings.

One part of PPG Industries' coatings line of products were its Keeler & Long ("K&L") brand of high performance coatings, manufactured at a PPG Industries' factory in Watertown, Connecticut, and produced for use on applications associated with the power industry and other industrial applications. One type of K&L brand high performance coating was an epoxy-based paint system designed to withstand the severe environmental conditions within the primary containment area of a nuclear reactor, an area commonly referred to as the reactor's "Level 1 area." In the United States, ASTM International ("ASTM") develops and publishes standards for Level 1 coatings. The K&L Level 1 paint system has been tested and certified as meeting the ASTM Level 1 standard. To reflect the fact that the paint system satisfies these ASTM standards, a unique Level 1 product code was assigned for each of the coatings, and each batch of the Level 1 coatings is accompanied by a Certificate of Assurance ("COA") that certifies that the coatings were made using the same procedure and formula as the coatings that satisfied the ASTM tests. The Level 1 product codes for the Level 1 coatings at issue ("the Coatings") are as follows: a two-part epoxy base coat (product codes KL65487107A and KL65487107B), a two-part epoxy top coat (product code KLD19140 and KLD1B), and a thinner, or solvent (product code KL4092).

The Coatings were exported from the United States in 2006 at the request of defendant **PPG PAINTS TRADING**. Defendant **PPG PAINTS TRADING** was a wholly-owned

2

subsidiary of PPG Industries. It was a Chinese corporation with its principal place of business in Shanghai, China. Defendant **PPG PAINTS TRADING** was engaged in the business of importing and exporting architectural, refinish, industrial and packaging coatings on behalf various PPG Industries business units.

### Relevant Legal Authorities

The parties agree that for purpose of this plea and factual proffer that the relevant law is set forth accurately in the Information. To summarize, the United States Department of Commerce ("DOC"), located in the District of Columbia, was responsible for reviewing and controlling the export of certain goods and technologies from the United States to foreign countries and entities. The DOC implemented that authority through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730–774, which were in effect pursuant to provisions of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701–1706, by virtue of Presidential Executive Order 13222 and successive Presidential notices and orders.

Through the EAR, the DOC authorized the exportation of goods and technology to restricted countries and foreign end-users through the issuance of a license. Any export or reexport of goods from the United States to a restricted country or foreign end-user without such a license was a violation of the EAR. DOC's Bureau of Industry and Security ("BIS") published a list of prohibited individuals or entities (the "Entity List") found in Supplement No. 4 to Part 744 of the EAR. Individuals or entities were placed on the Entity List by BIS because they had engaged in activities that could result in an increased risk of diversion of exported, reexported and transferred items to weapons of mass destruction programs, to activities sanctioned by the State Department, or to activities contrary to United States national security and/or foreign policy interests.

The Pakistan Atomic Energy Commission ("PAEC") was the science and technology organization in Pakistan responsible for, among other things, Pakistan's nuclear program, including the development and operation of nuclear power plants in Pakistan. In or about November 1998, following Pakistan's first successful detonation of a nuclear device, BIS added the PAEC, as well as the PAEC's subordinate nuclear reactors and power plants, to the Entity List. As a restricted end-user, a United States manufacturer seeking to export, reexport or transship any items subject to the EAR to the PAEC or its nuclear power plants or reactors would need first to obtain a license from DOC in the District of Columbia.

In, 2006, the Chashma Nuclear Power Plant 2 ("Chashma 2") was a PAEC nuclear power plant under construction near Kundian, Punjab province, Pakistan. Because it is a PAEC nuclear power plant, export, reexport or transshipment of any items subject to the EAR to Chashma 2 would require a license from the DOC. The Coatings at issue were items subject to the EAR and fell within the jurisdiction of the DOC.

### Relevant Entities

Company A was a Chinese construction company specializing in overseas nuclear and civil engineering project management. Company A was the general contractor responsible for the construction of Chashma 2 for the PAEC.

Company B was a Chinese construction company specializing in nuclear engineering, municipal engineering, fire engineering, road engineering, and steel structure engineering. Company B was a subcontractor working for Company A on the construction of Chashma 2. Company B was responsible for applying coatings at Chashma 2.

Company C was a Chinese distributor of coatings located in Shanghai, China.

## PPG PAINTS TRADING's Chashma 2 Contract

In or about December 2005, defendant **PPG PAINTS TRADING** entered a contract with Company B for defendant **PPG PAINTS TRADING** to supply the Coatings for application by Company B at Chashma 2 ("Chashma 2 Contract"). The contract contained a liquidated damages clause if there were any delayed shipments under the contract. Because Chashma 2 was a PAEC facility, on or about January 20, 2006, PPG Industries submitted a license application to DOC in the District of Columbia for authorization to export the Coatings for application at Chashma 2.

On or about June 8, 2006, PPG Industries was informed that its license application would be denied by DOC. On or about June 9, 2006, PPG Industries notified defendant **PPG PAINTS TRADING** that it must abide by the ruling of the DOC to deny the license and instructed defendant **PPG PAINTS TRADING** to advise Company B that it could not provide the Coatings to Company B. In response, on or about June 9, 2006, defendant **PPG PAINTS TRADING** informed PPG Industries that it had informed Company B that it could not provide the Coatings.

## The Conspiracy

In fact, on or about June 15, 2006, defendant **PPG PAINTS TRADING** met with representatives of Company A and Company B and agreed upon an arrangement whereby **PPG PAINTS TRADING** could satisfy its obligations under the Chashma 2 Contract by selling the Coatings to Company C, a third-party distributor in China, which, in turn, would sell the Coatings to Company A or Company B for application at Chashma 2 in Pakistan. The goal of involving the third-party Chinese distributor was to structure the transaction so as to conceal the true end-user of the Coatings from the United States, thereby evading the prohibitions and

licensing requirements of the IEEPA and the EAR, and avoiding breach of the Chashma 2 Contract.

These facts were reported to counsel for PPG Industries (who, in turn, reported them to the United States at PPG Industries' direction) by an individual who worked at the high performance coating business unit at **PPG PAINTS TRADING** responsible for the sale of the Coatings and who was involved in the conspiracy ("Employee A"). Employee A explained that the **PPG PAINTS TRADING** employees involved in the conspiracy were aware of the need for the DOC license for the Coatings shipments and of the denial of the license application by DOC in June 2006. Further, Employee A identified Company C as the third-party Chinese distributor used by **PPG PAINTS TRADING** to facilitate delivery of the Coatings under the Chashma 2 Contract after the denial of the license in June 2006. Employee A did not indicate that PPG Industries' employees were aware of the arrangement, and suggested that **PPG PAINTS TRADING** employees involved in the post-license shipments sought to conceal the true nature of the post-license shipments to Chashma 2 from PPG Industries.

Employee A's statements concerning post-license shipments to Chashma 2 were corroborated by PPG Industries and **PPG PAINTS TRADING** records provided by PPG Industries during the investigation, which included the following:

    a.    On or about June 20, 2006, Company C sent a purchase order to defendant **PPG PAINTS TRADING** for two shipments of same type of coatings called for in **PPG PAINTS TRADING's** Chashma 2 Contract, namely 160 gallons of KL65487107A, 40 gallons of KL65487107B, and 40 gallons of KL4093 in the first shipment to be delivered by air freight ("the First Shipment of Coatings"), and 80 gallons of KL65487107A, 20 gallons of KL65487107B, and 20 gallons of KL4093 in the second shipment to be delivered by sea freight

("the Second Shipment of Coatings").  The purchase order falsely stated that the Coatings were to be used at "Dalian Shi Zi Kou Nuclear Power Station," a nuclear power plant purportedly under construction in China the export of goods to which would not require a DOC license. Publicly available information indicates that in June 2006, there was no nuclear power plant at Dalian Shi Zi Kou that would require Level 1 coatings.

   b. On or about June 21, 2006, defendant **PPG PAINTS TRADING** sent a purchase order to PPG Industries requesting the production of the First Shipment of Coatings and their delivery by airfreight to defendant **PPG PAINTS TRADING**.

   c. On or about July 13, 2006, defendant **PPG PAINTS TRADING** responded to an email from PPG Industries requesting the end user for the First Shipment of Coatings.  Defendant **PPG PAINTS TRADING** falsely stated that the end user was "Da Lian Shi Zi Kou Nuclear Power Station."

   e. At defendant **PPG PAINTS TRADING's** request and direction, in or about July 2006, PPG Industries exported the First Shipment of Coatings from the United States to defendant **PPG PAINTS TRADING** in Shanghai, China.  This First Shipment of Coatings forms the basis for Count II of the Information charging **PPG PAINTS TRADING** with an Unlawful Export or Attempted Export in violation of IEEPA and the EAR.

   f. On or about July 28, 2006, after the First Shipment of Coatings had arrived in China, defendant **PPG PAINTS TRADING** sent an e-mail to PPG Industries requesting certain shipping documents to facilitate getting "the goods ready for exporting. Once the documents are received, the goods will be good to go."

g. On or about July 31, 2006, defendant **PPG PAINTS TRADING** issued a "Sales Order Acknowledgement [sic]" to facilitate transfer of the First Shipment of Coatings to Company C.

h. On or about July 31, 2006, defendant **PPG PAINTS TRADING** issued a document entitled "Delivery Docket" to facilitate transfer of the First Shipment of Coatings to Company C.

i. On or about July 31, 2006, Company C provided delivery instructions to defendant **PPG PAINTS TRADING** requesting the delivery of the First Shipment of Coatings to Company C by 5:00 p.m. on the same day and falsely stating that the goods were for use at the Dalian nuclear power plant.

j. On or about July 31, 2006, defendant **PPG PAINTS TRADING** billed Company C 146,240.01 Chinese Yuan for the First Shipment of Coatings.

k. On or about August 2, 2006, defendant **PPG PAINTS TRADING** received and deposited 146,240 Chinese Yuan from Company C in payment for the First Shipment of Coatings. This payment was .01 Chinese Yuan less than the amount billed by defendant **PPG PAINTS TRADING** to Company C for the First Shipment of Coatings.

l. On or about August 2, 2006, defendant **PPG PAINTS TRADING** billed Company C .01 Chinese Yuan for the arrearage in the amount of money Company C owed defendant **PPG PAINTS TRADING** for the First Shipment of Coatings.

m. On or about August 7, 2006, defendant **PPG PAINTS TRADING** sent a purchase order to PPG Industries requesting the production of the Second Shipment of Coatings.

n. On or about August 15, 2006, defendant **PPG PAINTS TRADING** responded to an email from PPG Industries requesting the end user for the Second Shipment of

Coatings. Defendant **PPG PAINTS TRADING** falsely stated that the end user was "Da Lian Shi Zi Kou Nuclear Power Station."

   o. At defendant **PPG PAINTS TRADING's** request and direction, in or about September 2006, PPG Industries exported the Second Shipment of Coatings from the United States to defendant **PPG PAINTS TRADING** in Shanghai, China. This Second Shipment of Coatings forms the basis for Count III of the Information charging **PPG PAINTS TRADING** with an Unlawful Export or Attempted Export in violation of IEEPA and the EAR.

   p. On or about October 24, 2006, defendant **PPG PAINTS TRADING** issued a sales order acknowledgment to facilitate transfer of the Second Shipment of Coatings to Company C.

   q. On or about October 31, 2006, defendant **PPG PAINTS TRADING** billed Company C 69,019.99 Chinese Yuan for the Second Shipment of Coatings.

   r. On or about November 1, 2006, Company C provided delivery instructions to defendant **PPG PAINTS TRADING** for the Second Shipment of Coatings.

   s. On or about November 2, 2006, defendant **PPG PAINTS TRADING** issued a document entitled "Delivery Docket" to facilitate transfer of the Second Shipment of Coatings to Company C.

   t. On or about October 16, 2009, defendant **PPG PAINTS TRADING** received and deposited 69,020 Chinese Yuan from Company C in payment for the Second Shipment of Coatings.

   u. On or about October 23, 2006, defendant **PPG PAINTS TRADING** sent a purchase order to PPG Industries requesting the production and shipment to defendant **PPG PAINTS TRADING** of same type of coatings called for in **PPG PAINTS TRADING's**

Chashma 2 Contract, namely 80 gallons of KL65487107, 20 gallons of KL65487107B, 75 gallons of KLD19140, 50 gallons of KLDB9140, and 40 gallons of KL4093 ("the Third Shipment of Coatings"). In an e-mail accompanying that purchase order, defendant **PPG PAINTS TRADING** falsely stated that the end user for the Third Shipment of Coatings was "Da Lian Shi Zi Kou Nuclear Power Station."

v. At defendant **PPG PAINTS TRADING's** request and direction, in or about December 2006, PPG Industries exported the Third Shipment of Coatings from the United States to defendant **PPG PAINTS TRADING** in Shanghai, China. This Third Shipment of Coatings forms the basis for Count IV of the Information charging **PPG PAINTS TRADING** with an Unlawful Export or Attempted Export in violation of IEEPA and the EAR.

w. On or about January 26, 2007, defendant **PPG PAINTS TRADING** issued a sales order acknowledgment to facilitate transfer of the Third Shipment of Coatings to Company C.

x. On or about December 18, 2006, defendant **PPG PAINTS TRADING** wired funds to PPG Industries which included a payment of $12,455.13 for the First Shipment of Coatings, and $1965.74 for the Second Shipment of Coatings.

In January 2007, following the statements of Employee A to PPG Industries, PPG Industries ordered **PPG PAINTS TRADING** not to sell or transfer the Third Shipment of Coatings. The Third Shipment of Coatings were then returned to the United States before reaching Pakistan, and turned over to BIS custody.

In or about March 2007, following PPG Industries halt of the Third Shipment of Coatings, Company B sent notification to **PPG PAINTS TRADING** claiming **PPG PAINTS TRADING's** unilateral breach of the Chashma 2 Contract.

At no time did the defendant **PPG PAINTS TRADING** receive or possess a license or authorization from the DOC to export, reexport or transship the Coatings from the United States to Chashma 2. At all relevant times hereto, **PPG PAINTS TRADING** knew that the Coatings exported from the United States were destined for Chashma 2.

The proceeds obtained, directly or indirectly, as the result of the offenses alleged in Count One through Count Three of the Information were $32,319.

### Limited Nature of Factual Proffer in Support of Guilty Plea

This factual proffer is not intended to constitute a complete statement of all facts known by the United States, but is intended to provide the necessary factual predicate for defendant **PPG PAINTS TRADING's** plea of guilty to Counts I through IV of the Information.

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY

_____
G. MICHAEL HARVEY (D.C. Bar No. 447465)
JOHN BORCHERT (D.C. Bar No. 472-824)
Assistant United States Attorneys
National Security Section
555 Fourth Street, NW (11th Floor)
Washington, D.C. 20530
(202) 252-7810 (Harvey)
(202) 252-7811 (Borchert)
Michael.Harvey2@usdoj.gov
John.Borchert@usdoj.gov

December 21, 2010

11

### Defendant's Stipulation and Signature

I am authorized to act on behalf of defendant PPG Paints Trading (Shanghai) Co., Ltd., in this matter.

On behalf of defendant PPG Paints Trading (Shanghai) Co., Ltd., after consulting with its attorneys and pursuant to the plea agreement entered into this day with the United States, I hereby stipulate that the above proffer of facts is true and accurate. I further stipulate that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

PPG Paints Trading (Shanghai) Co., Ltd.

Date: _____

VIKTORAS RIMAS SEKMAKAS

### Attorney's Acknowledgment

I am counsel for defendant PPG Paints Trading (Shanghai) Co., Ltd., I have carefully reviewed the above proffer of facts with my client. To my knowledge, the decision to stipulate to these facts is an informed and voluntary one.

Date: _____

ROBERT N. DRISCOLL, ESQ.
Attorney for PPG Paints Trading (Shanghai) Co., Ltd.

12